**UNITED STATES ex rel. STEINBERG v. GRAHAM, Commandant, Camp Joseph T. Robinson, Ark., et al.**

No. 953.

District Court, E. D. Arkansas, W. D.

Nov. 28, 1944.

Solomon Badesch, of New York City, for relator.

Sam Rorex, U.S.Atty., of Little Rock, Ark., Lt. George Red, Litigation Officer, Eighth Service Command, of Dallas, Tex., and Warren E. Wood, Asst. U. S., Atty., of Little Rock, Ark., for respondents.

TRIMBLE, District Judge.

Rabbi Ephraim M. Steinberg, of New York City, filed a petition for a writ of habeas corpus for his son, Isidore Allan Steinberg, hereinafter called the relator, on the 30th day of September, and named as respondent, Col. Grover C. Graham, Commandant of Camp Joseph T. Robinson, Arkansas. It later appearing that Col. Graham did not have custody, control or command of the relator, on October 11, 1944, an amendment was filed by permission of the Court and the Commanding Officer of the 1290th U. S. Engineer Combat Battalion, Camp Joseph T. Robinson, was also named as respondent. The Court having granted the writ as to both respondents, both have been duly served, and have filed responses in this cause, and the issues are now fully before the Court. On November 3rd, 1944, a hearing was had in open court.

The relator contends that he is entitled to be released from custody, command and control of the military authorities for the reason that Local Board No. 95, Bronx, New York, in classifying him as I-A instead of IV-D, acted in a capricious, arbitrary and illegal manner. He contends that he is entitled to classification in IV-D, in that he was a bona fide student of the ministry, in continuous attendance at a duly recognized divinity or theological school, which school was preparing its students for the rabbinate, and which had been and is recognized as such by all orthodox rabbinical authorities, conceded and acknowledged as such by the National and Local Headquarters of the United States Selective Service System, and which is on the list of the approved theological schools published by the National Headquarters of the Selective Service System, and which has been functioning as such school for more than one year prior to the enactment of the Selective Training and Service Act of 1940, 50 U.S.C.A. Appendix § 301 et seq., and the rules and regulations promulgated thereunder, and which school is within the purview of Section 622.44 of the Rules and Regulations under that Act.

It is further alleged that the relator was originally classified by the local board in class IV-D, which was later changed to I-A, which change was due to an arbitrary, capricious and illegal act on the part of the local board, and that as a direct result of such change of classification, the relator was inducted into the United States Army on March 11, 1944, and is now illegally detained by virtue thereof.

Nowhere is it alleged or contended by the relator that he was denied the opportunity to produce before the local board, the appeal board, or the theological panel, any evidence which he had to support his claim for classification in IV-D, to urge upon their consideration any reason he had, or that any of these boards or panel did not consider such evidence. The gist of his claim is that the overwhelming evidence, in fact the uncontradicted evidence, shows that he is entitled to such classification, and the failure and refusal of the local board to so classify him is, therefore, arbitrary, capricious and illegal.

The relator in effect is asking the court to substitute its judgment for that of the local board. He pleads:

"11. It is indeed inconceivable that any body of men in the face of all of the foregoing could ascribe anything else but good faith as to my studies for the ministry and good faith, honesty and sincerity as to my intentions to become a duly ordained rabbi. Any other determination would certainly be without basis and wholly inconsistent and contrary to the proofs and the record.

"12. In the face of such an overwhelming record of proof of my good faith as a life-time student of the ministry, and the persistent refusal of the local board to put me back in my original classification of IV-D and their consistent persistence to continue me in I-A must be deemed to be nothing short of arbitrary and capricious on the part of this local board."

The relator was born on May 5, 1923, in the City of Passaic, N. J., and in 1929 with his family moved to the City of New York. At the time of his registration he was residing within the jurisdiction of Local Board No. 95, Bronx, New York, with which board he registered on or about November 19, 1942, as required by the National Selective Training and Service Act of 1940. On November 25, 1942, the registrant executed his Selective Service questionnaire. He made claim that he had completed eight years of elementary school, four years of high school, and that in addition thereto he had studied physical education at New York University for one

and one-half years and had studied for the ministry four and one-half years at Rabbi Isaac Theological Seminary; that at the time he executed his questionnaire he was a student "majoring in ministry preparing for rabbi" at Rabbi Isaac Theological Seminary of Yeshiva College, and requested a classification of IV-D. From other documentary evidence it appears that he was studying the teaching of physical education at New York University and the four years he stated he was studying for the ministry at Rabbi Isaac Theological Seminary were the same four years he had stated he had spent in high school.

On December 21, 1942, this registrant was given an opportunity to appear personally before three members of Local Board No. 95, at which time he stated that he was attending the Yeshiva in the morning and also attending New York University "to build myself up;" that he attended the Yeshiva from 1937 to 1941 when he graduated; he then went to New York University and in the fall of 1942 re-entered the Yeshiva. The registrant's father was also present at this hearing and gave such information as he desired. On December 21, 1942, the Local Board classified the registrant IV-D, as a theological student preparing for the ministry. At the request of the local board, on January 20th, 1943, the New York University furnished the local board with a certificate which showed the registrant was attending the School of Education at that University; was a sophomore, having completed 34 hours, was majoring in "Teaching physical education and health for the B. S. Degree," and had eight credit hours in progress, as follows: Skill Technique, two credit hours; Types of Literature, two credit hours; Teaching Physical Education in Elementary Schools, two credit hours; Observation, Conference and Student Teaching in Community Organizations, two credit hours. On July 19, 1943, the registrant was again given an opportunity to appear before three members of the local board relative to his classification, and he so appeared. At that time he stated he had taken twelve credit hours at New York University from February to June, 1943; he did not know whether he would go back to New York University in September, 1943; he was attending the Yeshiva from 9 to 1 and New York University from 2 to 5; he was taking a full course at New York University; that he did not have to pay at the Yeshiva because his father

taught there. In letters dated July 28, 1943, and August 3, 1943, the Registrar and Dean of the Yeshiva College advised the local board that the registrant was still a regularly enrolled day student in good standing at that institution, and requested that his IV-D classification be continued.

On August 9, 1943, the local board reclassified the registrant in I-A, and on August 11, 1943, notified him of this classification. On August 16, 1943, the registrant by letter requested a personal appearance before the local board, which was granted, and on August 30th, 1943, the registrant was given a third opportunity to appear personally before three members of the local board, and, at this appearance, he produced such evidence as he desired. The local board continued his I-A classification, and on August 31, 1943, he was so notified.

On September 8, 1943, the registrant appealed his classification in I-A to the Board of Appeal, and the local board forwarded the file to New York City Board of Appeal, Panel No. 2, and there the registrant presented additional matter to support his claim for IV-D classification. On October 5, 1943, the Board of Appeal returned the file to the local board with a request that the registrant's case be reviewed by the Occupational Adviser of the New York City Selective Service Headquarters, and on October 7, 1943, the file was forwarded to that headquarters, who referred the file to the regularly constituted panel on theological classifications, for an advisory recommendation. On December 29, 1943, the registrant at his request appeared in person before the panel. This was the registrant's fourth personal appearance to urge his claim for IV-D classification. There he produced before such panel such matters as he desired, was apparently questioned at some length by the panel, and his statements recorded there are somewhat in conflict with other statements made by him.

On January 17, 1944, the New York City Headquarters returned the registrant's file to Local Board No. 95, and advised that the panel believed that the registrant's status did not warrant an IV-D exemption. The local board was furnished a transcript of the hearing before the panel. In the letter transmitting this transcript there appeared the following language: "Of course, while the Local Board should give careful consideration to the recommendation of the special panel, formal determination of the

registrant's classification must rest with the Board itself or the appropriate appeal agency."

The registrant's file was again forwarded to the Board of Appeal, and after consideration the Board of Appeal classified the registrant in I-A, unanimously, and on January 24, 1944, the registrant was notified of the action of the Board of Appeal. On January 31, 1944, the registrant was ordered to report for pre-induction physical examination on February 10, 1944, was examined on that date, found to be physically fit and acceptable by the Army for general military service. On February 19, 1944, he was ordered to report for induction on March 11, 1944, and on that date was duly inducted.

There were other letters, statements and documents in the file introduced by stipulation, which bore more or less directly upon the status of the registrant as a ministerial student, and these were all before the local board, and some of them before the Appeal Board and Advisory Panel when they considered his classification. At the hearing on the merits the relator was present, but was not sworn as a witness, nor did he offer himself as a witness.

Counsel for the parties at the hearing raised some issues which may be disposed of before considering the important legal question involved.

The relator challenges the legality of the Advisory Panel on Theological Classification, and avers that there is no provision in the Selective Training and Service Act of 1940, nor in any amendment thereto, which legalizes the creation of such an agency.

It is admitted that this panel before which the relator appeared as a registrant seeking IV-D classification was composed of prominent men of the Jewish faith, co-religionists with the relator, and one or two of them rabbis. These men were chosen because they would be better informed on Jewish religious customs, law and usage in the training and ordaining of the rabbis than the ordinary run of business men giving of their time on the Selective Service Local Boards. Furthermore, it is clearly evident that their action was only advisory. As evidence of this there appears, as before noted, a letter from Headquarters to Local Board No. 95, returning registrant's file after review by the panel, in which is contained the statement quoted above that "while the Local Board should give careful attention or consideration to the recommendation of the special panel, the formal determination of the registrant's classification must rest with the local board itself or the appropriate appeal agency."

The panel was only one more source of information upon which the local board might draw, and it was one more opportunity given the registrant to appear in person and urge his claim for exemption. It also appears that he was in no way prejudiced by any action the panel might have taken, as they found him classified I-A, and there they left him.

The existence of this panel was noted by the learned Judge in the case of United States ex rel. Morris Eli Isseroff v. Cain, etc., D.C., 57 F.Supp. 715, in an opinion handed down on November 8, 1944, this being a case in many ways similar to the one at bar, and arising in the City of New York. While the court there did not pass directly upon the legality of the panel, he noted its existence, and had he believed it to exist illegally, and its action prejudicial to the rights of the registrant in that cause, doubtless he would have made appropriate findings and orders. No prejudice appearing to any right the relator may have, occasioned by the existence and action of the panel, this issue will be found against the relator's contentions.

Counsel appearing for the Judge Advocate's Division assert and urge upon the Court's consideration their contention that the relator is under no such restraint as would entitle him to the issuance of the writ of habeas corpus.

It is admitted by counsel for the relator that he is under no more restraint than any other soldier on active duty, who is subject to all the orders of his superiors, both general orders and those directed to him personally.

To sustain their contention counsel for the respondents cite the case of Wales v. Whitney, 114 U.S. 564, 5 S.Ct. 1050, 1053, 29 L.Ed. 277. A consideration of that case, upon the facts discloses that it is not on all fours with the case at bar. It is true that there the court said: "Something more than normal restraint is necessary to make a case for habeas corpus. There must be actual confinement or the present means of enforcing it." But there a commissioned officer, of high rank, was ordered not to leave the City of Washington until further orders. He could go to his home, visit his lawyer's office if he desired, visit his

friends, or go anywhere within the City. This is quite different from the status of an enlisted man, in a regularly organized and constituted military camp or cantonment, who must obey the orders of all his superior officers, directed personally to him, or general in their nature, and who cannot leave his organization, his area, or the camp, go to the office of an attorney, visit his friends, or visit his home without a pass or permit from constituted authority.

The Court is of the opinion that the restraint now imposed upon the relator is sufficient to warrant the issuance of the writ, if the relator is otherwise entitled thereto.

Can the court substitute its judgment for that of the local board? If it cannot, then clearly the writ must be discharged and the relator remanded to the custody, control and command of the military authorities, the respondents in this case.

■ Relator in his brief cites the case of Johnson v. United States, 126 F.2d 242, 247, decided in the Eighth Circuit, to sustain his contention that the Court can and should substitute its judgment in this case for that of the local board. But there the court said: "The courts have no power to classify registrants—that is solely for the agencies created by or under the authority of Congress. But classification by such agencies must, under the powers given them by Congress, be honestly made, and a classification made in the teeth of all the substantial evidence before such agency is not honest but arbitrary. Courts can prevent arbitrary action of such agencies from being effective." This court subscribes fully to that holding. But, in this case, can it be said that the finding of the local board is against all of the substantial evidence, even, before it, and that board wilfully shut its eyes and refused to weigh and consider it? I think not.

■ The relator is a native born citizen, twenty-one years of age, and the presumption is that he is subject to military service as any other citizen of like age, and subject to induction upon proper order of the local board. Therefore the burden is upon him to bring himself within the exemption he claims. This presumption and burden continue throughout the whole proceedings, hence the evidence to the contrary which he may produce is never uncontradicted. Aside from that there is substantial evidence negativing his claim.

■ Where there is a question of the credibility or weight of the evidence adduced before the local board, it is within the province of that board to determine the credibility and weight of that evidence, and the court cannot substitute its judgment for that of the local board.

■ Relator urges upon the attention and consideration of the court the evidence given and statements made by the father of the relator, who brought this action in his behalf, and of the officers of the Yeshiva. Evidently the local board found the weight of the testimony against this testimony, and did not believe this testimony as to what the relator's intentions were as to becoming a rabbi. They probably did, and rightfully may have presumed that they got that information as to the relator's intention from the relator himself. Over against this they could well have weighed other statements, facts and circumstances, and given to the latter greater weight. This was the responsibility of the local board and they have taken action accordingly.

It would serve no useful purpose to distinguish all the cases cited by relator in his brief. The court finds none from this Circuit or the Supreme Court of the United States supporting the claim of the relator.

In the case of Ex parte Stanziale, 138 F.2d 312, 315, the Circuit Court of Appeals for the Third Circuit had a similar question before it. That court said: "Petitioner's complaint is that the action of the Local and Appeal Boards in classifying her husband I-A was improper because he had dependents, a wife and a child. It was neither averred nor shown that the Boards failed to consider his evidence or review the facts of his case, that is give Stanziale a 'hearing.' Our inquiry might well end here. If the Board considered the case in the light of the facts presented to it the registrant cannot have a court review by claiming that a wrong conclusion was reached even if we, were we triers of the fact, might agree with him."

In the District Court case of United States ex rel. Levy v. Cain, etc., 55 F. Supp. 956, 957, the Court said:

"Under the foregoing state of facts [very similar to those in this case], the Court is requested to sustain the writ upon the theory which has been stated; in other words, to overrule the action of the Board because

it must be deemed to be erroneous by so wide a margin that no other conclusion is possible. Apparently it is thought that in extreme cases the Court is to substitute its judgment for that of the Local Board.

"Authority for that contention is said to be found in several cases, the most recent being that of United States ex rel. Rubin v. Magruder, D.C., 55 F.Supp. 947, for a copy of the opinion in which this Court is indebted to relator's counsel. I have considered that opinion carefully, and think it comes down to this, that the learned judge who wrote it did not agree with the action, under examination by him, of the Local Board which functioned in that case, and therefore sustained the writ.

"The relator also relies upon (citing several cases) to sustain his contention that this Court is required to ascertain, from an examination of the proceedings touching the classification of this relator, whether the result arrived at by the Local Board is the product of arbitrary and capricious action; and if so to abrogate it through the medium of this writ.

" * * * As I understand the law, * * * the Court is not concerned with the decision of the Local Board, as such, but is required to ascertain if it has been arrived at according to procedure ordained in the provisions of the Selective Service Law and regulations; for example, that the relator has been given a hearing as that law requires; that the entire evidence tendered by him has been received by the Local Board; that he has been afforded an opportunity to have his classification reviewed by the Board of Appeal, and that the latter has considered and acted upon his case; and finally that Presidential intervention has not prevented his induction. Less than that, the Court cannot do in the discharge of its essential functions; more than that, Congress has not clothed it with authority to do. Such seems to be the teaching of Ex parte Stanziale, 3 Cir., 138 F.2d 312, certiorari denied Stanziale v. Paullin, 320 U.S. 797, 64 S.Ct. 267." See also Falbo v. United States, 320 U.S. 549, 64 S.Ct. 346; Crutchfield v. United States, 9 Cir., 142 F. 2d 170, United States ex rel. Trainin v. Cain, 2 Cir., 1944, 144 F.2d 944; United States ex rel. Isseroff v. Cain, D.C., 57 F.Supp. 715.

■■ The Court is of the opinion that the relator has been accorded every opportunity to be heard upon his claim for classification in IV-D, and that the finding of the local board was not arrived at capriciously, arbitrarily nor illegally. Even should the Court, if it were a trier of the facts, disagree with the conclusion of the local board, it is a matter committed by Congress to that board, and the Court is without authority to substitute its judgment for that of the local board, and to interfere with the orderly induction of citizens into the armed forces by the proper functioning of the Selective Service System set up by Congress. The time and effort consumed in this registrant's case illustrates the wisdom of Congress in limiting the review by the Courts as it has. If the System had to spend as much time and effort on every registrant, or any substantial number of them, as in this case, no army could be created by the Selective Service System with any degree of speed.

The writ of habeas corpus will be discharged, the relator remanded to the custody of the respondents, and the petition dismissed for want of equity.

Counsel will prepare findings of fact and conclusions of law and present them to the Court for consideration.