In the Matter of the Petition of David W. Crane for a Writ of Habeas Corpus.

David W. CRANE, Petitioner,

v.

Commander G. H. HEDRICK, Military Personnel Department, United States Naval Training Station, Treasure Island, California, and Paul Ignatius as Secretary of the Navy, Respondents.

No. 47816.

United States District Court
N. D. California.

April 16, 1968.

Habeas corpus proceeding by United States Navy apprentice seaman whose application for discharge on ground of conscientious objection had been denied by chief of naval personnel. The District Court, Weigel, J., held that record disclosed no basis in fact for denial of application on ground that seaman was not a conscientious objector.

Paul C. Maier, Herzstein, Maier & Carey, San Francisco, Cal., for petitioner.

Cecil F. Poole, U. S. Atty., Jerry K. Cimmet, Asst. U. S. Atty., San Francisco, Cal., for respondents.

## MEMORANDUM OPINION AND ORDER

WEIGEL, District Judge.

David W. Crane, an apprentice seaman in the United States Navy stationed at Treasure Island, California, petitions for habeas corpus under 28 U.S.C. § 2241(c) (1964) to test the legality of his detention in the Navy.

On May 11, 1966, petitioner voluntarily enlisted for six years, two of which were to be served on active duty. He reported for such duty on December 27, 1966, and was ordered to Newport, Rhode Island, to attend signalman school, which he did. On January 26, 1967, pursuant to Department of Defense Directive [hereinafter referred to as D.O.D.] No. 1300.6 and the Bureau of Naval Personnel Manual [hereinafter referred to as BUPERS-

MAN] Article C-5210, he applied in handwriting for discharge on the grounds of conscientious objection.[1]

On February 13, 1967, pursuant to the provisions of BUPERSMAN C-5210 (2) (4) (d), the Chief of Naval Personnel forwarded Crane's application to the Director of Selective Service for an advisory opinion. On March 3, 1967, General Hershey replied that "based on the information in this file, it is my opinion that David Warren Crane would not be classified as a conscientious objector if he were being considered for induction at this time." (R. 23.) On March 8, 1967, "in view of" the recommendation of General Hershey, the Chief of Naval Personnel denied Crane's application for discharge. (R. 22.)

On July 31, 1967, Crane refused to obey orders to load ammunition upon a ship. He received a Captain's Mast for this infraction and was sentenced to two weeks restriction. On August 28, 1967, Crane left his ship without permission just prior to its departure for Vietnam.

On September 11, 1967, he petitioned this court for habeas corpus, alleging that he was being held in the Navy in violation of the rights guaranteed to him by the first and fifth amendments to the United States Constitution. On September 12, 1967, the court issued an order to show cause. Respondents filed their return on October 4, 1967, alleging that no constitutional right had been violated and, further, that this court was without jurisdiction.

Respondents' jurisdictional argument is twofold: first, respondents argue that an enlisted man in the armed services is not in "custody" as that term is used in section 2241. While there is some support for this contention,[2] the overwhelming weight of authority is to the contrary.

---

1. The same application was made in typewritten form on February 2, 1967.

2. See Wales v. Whitney, 114 U.S. 564, 5 S.Ct. 1050, 29 L.Ed. 277 (1885); United States ex rel. McKiever v. Jack, 351 F.

2d 672 (2d Cir. 1965); In re Green, 156 F.Supp. 174 (S.D. Cal. 1957), appeal dismissed as moot, 264 F.2d 63 (9th Cir.), cert. denied, Green v. United States, 359 U.S. 917, 79 S.Ct. 594, 3 L.Ed.2d 578 (1959).

In Jones v. Cunningham, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963), the Supreme Court noted that "habeas corpus has also been consistently regarded by lower federal courts as the appropriate procedural vehicle for questioning the legality of an induction or enlistment into the military service." Id. at 240, 83 S.Ct. at 375. E.g., Gibson v. United States, 329 U.S. 338, 67 S.Ct. 301, 91 L.Ed. 331 (1946); de Rozario v. Commanding Officer, 390 F.2d 532 (9th Cir. 1967); Striker v. Resor, 283 F.Supp. 923 (D.N.J.1968); United States ex rel. Steinberg v. Graham, 57 F.Supp. 938 (E.D. Ark. 1944); R. Sokol, A. Handbook of Federal Habeas Corpus 24–25 and cases collected in n. 78 (1965).

Respondents argue that these cases are distinguishable since they deal with attacks upon the validity of induction or enlistment, whereas here petitioner attacks only the validity of continued detention. This distinction is not persuasive on the question whether a person in the armed services is in "custody" within the meaning of section 2241. Neither the nature nor extent of custody is changed by the reasons advanced for challenging it. Cf. Gion v. McNamara, No. 67–1563–EC (C.D. Cal. Jan. 8, 1968), notice of appeal filed, 9th Cir., March 5, 1968.

▮ Respondents' second "jurisdictional" argument is that petitioner has failed to exhaust a remedy available to him within the Navy, to wit: presentation of his constitutional claims, in the form of a defense, at a court martial proceeding. The argument assumes that the right to defend against a court martial is a "remedy".

Respondents rely primarily on Noyd v. McNamara, 267 F.Supp. 701 (D. Colo.), aff'd per curiam, 378 F.2d 538 (10th Cir.), cert. denied, 389 U.S. 1022, 88 S. Ct. 593, 19 L.Ed.2d 667, (1967), and its progeny.[3]

The reliance upon Noyd is not well taken.

Examination of the facts in Noyd will disclose it to be one of the cases applying the doctrine that federal courts do not intervene in military affairs.[4] Captain Noyd had served in the Air Force for over eleven years. He was opposed to the war in Vietnam but was willing to accept military assignment not in conflict with his views of American policy in Southeast Asia. On such a record, he was really asking the federal courts to review duty assignments. This was appropriately refused.[5]

Noyd, then, stands for the sensible and settled proposition that courts do not intervene in military affairs. In the case at bar, the sole question is whether petitioner is lawfully or unlawfully detained in the Navy. That is a question cognizable by this court, and Noyd does not hold contrarily.

Cases both before and after Noyd make clear that a petition for habeas corpus is a proper basis for judicial determination of such a question. In de Rozario v. Commanding Officer, supra, the court of appeals for this circuit im-

---

3. See Corder v. Babcock, No. 48205 (N.D. Cal. Dec. 6, 1967); Gillen v. McNamara, No. 47352 (N.D.Cal. Aug. 1, 1967). Both Corder and Gillen rely on Noyd as an alternative reason for denying the relief requested without discussion of Noyd's applicability to the questions presented in the respective cases.

In Brown v. McNamara, 387 F.2d 150 (3d Cir. 1967), cert. denied, 36 U.S.L.W. 3377 (Apr. 2, 1968), the court noted the existence of Noyd without deciding whether exhaustion by court martial was a prerequisite to relief in the federal courts. Rather, the court considered the merits of petitioner's contention and re-

jected his claim on the ground that the action of the Army was not arbitrary.

4. The court of appeals noted that "the essence of appellant's claim is that the federal judiciary should review and determine the validity of military assignments to duty. This we cannot do." 378 F.2d at 540.

5. The law is clear that the federal courts are powerless to interfere with duty assignments of persons lawfully in the armed services. See Orloff v. Willoughby, 345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842 (1953).

plicitly reiterated the rule that a person in the armed services need not submit to court martial before petitioning for habeas corpus to test the legality of his detention by the military authorities. de Rozario claimed that he had been unlawfully inducted into the army because he had unlawfully been classified 1A by his local draft board. The court of appeals considered his claim on the merits and rejected it on the ground that there was a basis in fact for his classification. There is no hint in the opinion that, because de Rozario had not first submitted to court martial, the court did not have power to grant the relief requested. The very opposite was necessarily implied.

Similarly, there is no hint in any of the authorities cited above [6] (for the proposition that habeas corpus is the proper means of testing the legality of enlistment or induction) that a petitioner must first raise his claims as a defense to a court martial. Moreover, those cases cannot meaningfully be distinguished from this on the ground that here petitioner attacks the lawfulness of his detention for reasons arising subsequently to entry into the service rather than prior. The fundamental question—detention in violation of constitutional rights—is exactly the same. Cf. Gion v. McNamara, supra; Gilliam v. Reaves, 263 F.Supp. 378 (W.D. La. 1966).[7]

If respondents' contentions were to prevail, the only way one in petitioner's position could raise his constitutional claims of wrongful detention would be by first committing a crime and facing the possibility of imprisonment. Neither Congress nor the majority of the federal courts has been willing to exact that price of persons seeking such relief.

Respondents' jurisdictional arguments having been considered,[8] the question remains whether petitioner is unlawfully detained by the United States Navy.

■ Petitioner's first claim is that exemption from military service on the grounds of conscientious objection is guaranteed by the first amendment to those within as well as to those without the armed services. He admits that there is no direct authority supporting this position and that language in a great many cases indicates the contrary. See, e. g., Fleming v. United States, 344 F.2d 912 (10th Cir. 1965); Brown v. Mc-Namara, 263 F. Supp. 686 (D.N.J.), aff'd, 387 F.2d 150 (3d Cir. 1967), cert. denied, 36 U.S.L.W. 3377 (Apr. 2, 1968). However, petitioner argues that a reading of United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965), suggests that the Supreme Court would have upheld the constitutional right had it not been able to resolve the problem before it on grounds of statutory construction. While this may be so, the fact remains that the Supreme Court did not therein declare a first amendment right to exemption from military service nor has it done so in any other case.

■ Petitioner suggests an alternative to the finding of a constitutionally protected right against military service. That alternative is to construe the religious exemption provision found

---

6. Jones v. Cunningham, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963); Gibson v. United States, 329 U.S. 338, 67 S.Ct. 301, 91 L.Ed. 331 (1946); Striker v. Resor, 283 F.Supp. 923 (D.N.J.1968); United States ex rel. Steinberg v. Graham, 57 F.Supp. 938 (E.D. Ark.1944); R. Sokol, A Handbook of Federal Habeas Corpus 24–25 and cases collected in n. 78 (1965).

7. The court in *Gilliam* noted that "the scope for reviewing the action of a selective service board by habeas corpus is identical to that to be applied in reviewing the action of the Army." 263 F. Supp. at 384.

8. Respondents originally argued that petitioner had failed to exhaust his military remedies for another reason—that petitioner could appeal the denial of his discharge under the provisions of 10 U.S.C. § 1552 (1964). However, respondents abandoned this position after petitioner filed such an appeal and had it rejected during the pendency of the proceedings before this court.

in 50 U.S.C.A. App. § 456(j) (Supp. 1967) as applicable to those within the armed forces. This would mean that petitioner would have been deprived of a statutory right to a hearing and an appeal. Such a construction, argues petitioner, would not only keep the court from having to decide the first amendment question, but would also negate the necessity of finding that petitioner was denied equal protection of the laws because he did not have a right to hearing and appeal while his civilian counterpart did.

Both the statutory construction argument and the equal protection argument must fail. As to statutory construction, section 456(j) is merely one of many exceptions to section 454, which provides that every male citizen of the United States is liable for training and service in the armed forces. The statute admits of only one interpretation, that it was meant to apply solely to those not yet in the service. Every court which has considered the problem has so held. See, e. g., United States ex rel. O'Hare v. Eichstaedt, 285 F.Supp. 476 (N.D.Cal., 1967); Brown v. McNamara, supra.

The equal protection argument falls because the Navy has provided a means for petitioner to apply for discharge as a conscientious objector. Petitioner's sole complaint in this regard is that he was not given the same full hearing that a civilian would have received. Given the difference in status between petitioner and a civilian, such a distinction is not unreasonable. See Brown v. McNamara, supra; cf. Burns v. Wilson, 346 U.S. 137, 73 S.Ct. 1045, 97 L.Ed. 1508 (1953).

Petitioner's final argument is that there was no basis in fact for the denial of his request. In support of his contention that a denial without basis in fact was a denial of due process of law,

petitioner cites Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132 (1953) and Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946).

In *Estep,* and again in *Dickinson,* the Supreme Court held that a defendant in a criminal prosecution for failure to submit to induction could raise the defense that there was no basis in fact for the Selective Service System's denial of the claim for exemption. This result obtained notwithstanding the fact that the Universal Military Training and Service Act provided that the denial of a claim of exemption by the Selective Service System was "final". 327 U.S. at 122, 66 S.Ct. 423.[9] The reasoning behind these decisions seems to be that the denial of an exemption without any basis in fact would be a denial of procedural due process of law. Id. at 125, 66 S.Ct. 423 (Murphy, J., concurring). Cf. Service v. Dulles, 354 U.S. 363, 77 S.Ct. 1152, 1 L. Ed.2d 1403 (1957).

*Estep* and *Dickinson* are factually distinguishable from the case here. However, a denial with no basis in fact here would be no less a denial of due process than were the denials in those cases.

■■ Respondents argue that, even if this court would otherwise have the power to grant the relief requested, the "basis in fact" test cannot be applied to review the denial of a discharge by the Navy since, under D.O.D. 1300.6, a discharge could be denied on the ground that it was not practical and equitable.[10] The court cannot agree with this argument.

First, the Chief of Naval Personnel did not act pursuant to D.O.D. 1300.6, but rather acted under the authority vested in him by BUPERSMAN C-5210. There is no provision for denial on the grounds of practicality or equitability in BUPERSMAN C-5210. Second, even assum-

9. The Act has since been amended to provide for some judicial review. 50 U.S. C.A.App. § 460(b) (3) (Supp.1967).

10. D.O.D. 1300.6 provides in paragraph III B that "bona fide conscientious objec- tion by persons who are members of the Armed Forces will be recognized to the extent practicable and equitable."

ing that D.O.D. 1300.6 is the applicable set of regulations, the Chief of Naval Personnel did not rely on grounds of practicality or equitability. The Chief of Naval Personnel denied Crane's application for discharge on the ground that he was not a conscientious objector. An executive body is bound by the reasons advanced for its actions, even when the reasons advanced are gratuitous. See, e. g., Vitarelli v. Seaton, 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959); SEC v. Chenery Corp., 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1943).[11]

■ Thus the ultimate question becomes whether there was any basis in fact for the finding that Crane was not a conscientious objector.[12] On January 17, 1968, this court held an evidentiary hearing to give counsel for each side an opportunity to produce any evidence, not already before the court, that the Chief of Naval Personnel might have considered in arriving at his decision. No evidence was produced, both sides agreeing that the only evidence before the Navy was the written documents which are a part of the record here. After examining those documents, and giving respondents the benefit of every factual inference which can be made in their support, it is clear beyond rational dispute that petitioner was entitled to discharge as a conscientious objector under the requirements of United States v. Seeger, supra.

To begin with, there could have been no doubt as to his sincerity. Both his commanding officer and his chaplain attested to it. There were no contrary statements. It is well established that, even under the basis in fact test, doubt as to sincerity cannot be predicated upon "mere speculation". See Dickinson v. United States, supra.

Substantively, Crane's views are expressed in the following passage from his application for discharge:

I believe that there is a positive force in the world which unites all men and gives them common capacities for joy and sorrow, understanding and ignorance, charity and selfishness, and love and hatred. I hold the differing beliefs of the people of the world to be a result of their respective frames of reference and not manifestations of "good" and "evil."

I further believe that it is possible for all countries of the world to come to terms with each other, but only through understanding and love. Since war is to me a product of ignorance, selfishness, and hatred, it is a force working against my belief in human unity, and therefore I cannot conscientiously participate in the armed forces of any country, including my own. (R. 27.)

This declaration, which is wholly supported and not in the least belied or contradicted by any other part of the record, plainly falls within the following definition of religious belief in *Seeger:*

Some believe in a purely personal God, some in a supernatural diety; others think of religion as a way of life envisioning as its ultimate goal the day when all men can live together in perfect understanding and peace. 380 U.S. at 174, 85 S.Ct. at 858; see Fleming v. United States, supra.

11. The reasoning behind these cases is even more forceful when applied to respondents' claim that the Chief of Naval Personnel could have denied Crane's application, under the regulations, on the ground that his religious beliefs had crystallized before he enlisted. This court will not assume that the Navy would base a finding on evidence which is non-existent. A reading of the record indicates that had the Navy based its denial on this ground, there would not have been basis in fact to support the denial.

12. The regulations make clear that the evaluation of the claim of conscientious objection is to be predicated upon the same standards as are applicable to the Selective Service System. At the time petitioner's application for discharge was acted upon by the Navy, the standard governing the Selective Service System was that formulated in United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed. 2d 733 (1965). Counsel for respondents did not contend otherwise.

**256**

There was no basis in fact for the denial of petitioner's application for discharge on the ground that he was not a conscientious objector.

For the reasons stated above, it is hereby ordered, subject to the stay to be specified, that David Warren Crane's petition for habeas corpus is granted, and that, being illegally restrained of his liberty, he be discharged from the custody of the United States Navy and from the custody of respondents;

The effect of this order is stayed until May 10, 1968, to allow the respondents, if so minded, to seek a further stay from the Court of Appeals for the Ninth Circuit.

The order made by this court on Dec. 15, 1967, shall remain in effect unless and until changed by this court or by the court of appeals.