Donald BENWAY, Petitioner,

v.

Capt. Bruce BARNHILL, Commanding Officer of the Newport Naval Hospital, Newport, Rhode Island.

Civ. A. No. 4093.

United States District Court
D. Rhode Island.

June 20, 1969.

Seth K. Gifford, Providence, R. I., for petitioner.

Edward P. Gallogly, U. S. Atty., Frederick W. Faerber, Asst. U. S. Atty., Providence, R. I., for respondent.

## OPINION

DAY, Chief Judge.

This is a petition for a writ of habeas corpus under the provisions of 28 U.S.C. § 2241(c) by Donald Benway, a member of the United States Navy, assigned to the Naval Hospital at Newport, Rhode Island, to test the legality of his detention in the Navy.

Upon the filing of said petition and after a consideration of its allegations, I entered an order to show cause under the provisions of 28 U.S.C. § 2243. Thereafter, by agreement of counsel for the parties, said petition was heard by me on April 14, 1969. No testimony was presented during said hearing and the only evidence submitted for my consideration was a certified copy of the naval record of the petitioner. (Respondent's Exhibit "A"). After oral arguments by counsel for the parties, I reserved decision on said petition pending the filing of memoranda by counsel for the parties in support of their respective contentions with respect to the merits of said petition.

On April 15, 1969, I entered an order restraining the respondent from ordering or suffering the petitioner to be removed from the jurisdiction of this Court pending the final determination of the merits of this proceeding.

An examination of said naval records establishes the following facts. The petitioner voluntarily enlisted in the United States Navy on April 14, 1967 for a term of four years and sought service in the medical corps. He satisfactorily completed recruit training at Naval Hospital Corps School at Great Lakes, Illinois, and was subsequently assigned to duty at the Naval Hospital, Newport, Rhode Island, to which he reported on January 1, 1968 and at which he is still stationed.

On or about August 13, 1968, the petitioner submitted to his Commanding Officer a request for his discharge as a conscientious objector pursuant to the provisions of Department of Defense Directive (hereinafter referred to as D.O.D.) 1300.6, as amended May 10, 1968 and BUPERINST 1900.5. With said request he enclosed a lengthy statement setting forth the information required by paragraph VI B. 1 of said D.O.D. In said statement he set forth in detail his religious beliefs, including his belief in a Supreme Being, and the reasons for his conscientious objection to his further service in the Navy.

In a separate statement he expressed his willingness, if discharged, to perform useful work under the Selective Service Conscientious Objector Work Program. He also executed and filed with his application a statement acknowledging that his discharge as a conscientious objector would bar all rights, based upon the period of service from which he was discharged, under any laws administered by the Veterans' Administration except his legal entitlement (if any) to any war risk, government (converted) or National Service Life Insurance.

In accordance with the procedures specified in said D.O.D. 1300.6 the petitioner, accompanied by his counsel, was interviewed by Lieutenant L. M. Mullen, the legal officer at the Naval Station at Newport, Rhode Island, on September 20, 1968. On September 23, 1968, in a written report to petitioner's Commanding Officer, Lieutenant Mullen stated that he was convinced that petitioner's "claim of conscientious objection was

genuine", and that "It is my opinion that H.M.₂ Benway's claim has merit".

Similarly, in conformity with said D.O.D. the petitioner also was interviewed by Lieutenant D. E. White, a chaplain, and Lieutenant F. M. Gatti, a psychiatrist. Each of them in his report stated that he believed petitioner to be sincere in his expression of conscientious objection to further military service.

Thereafter Captain John H. Cheffey, the Commanding Officer at said Naval Hospital, transmitted petitioner's application for discharge as a conscientious objector with its supporting information and the reports of said interviews to the Chief of Naval Personnel. Captain Cheffey in his letter of transmittal of said documents stated: "It is the opinion of this command that Petty Officer Benway's request for separation from the Naval Service as a conscientious objector is motivated by sincere personal beliefs."

On October 11, 1968, the Chief of Naval Personnel, pursuant to the provisions of said D.O.D. 1300.6, referred petitioner's application for discharge to the Director of Selective Service for an advisory opinion as to its merits. Subsequently, on October 25, 1968, the Director of Selective Service advised him that "Based upon the information" contained in the applicant's file, which you furnished us, it is the opinion of this Headquarters that Donald Raymond Benway would not be classified as a conscientious objector if he were being considered for classification under the Military Selective Service Act of 1967 at this time." No reasons were given for this conclusion.

On November 7, 1968, the Chief of Naval Personnel advised the petitioner's Commanding Officer that the petitioner's application for discharge was denied because "It is considered that his desire to avoid military service is not based on religious principles."

Subsequently, on November 20, 1968, the petitioner requested that his application be re-opened to permit him to submit further evidence in support thereof. His request was granted and on February 19, 1969 the Commanding Officer of said Naval Hospital re-submitted petitioner's application to the Chief of Naval Personnel with five additional letters relating to his character and the sincerity of his beliefs, and five poems which he had written prior to his enlistment in the Navy.

On March 20, 1969, the Chief of Naval Personnel advised said Commanding Officer that petitioner's application, after a reconsideration thereof, had again been denied because "his desire to terminate military service is not based on religious principles." After being notified that his application had again been denied, the petitioner filed this petition for a writ of habeas corpus on March 24, 1969.

During said hearing on April 14, 1969, and in his memorandum filed thereafter with me, counsel for respondent contended that this petition should be denied and dismissed because (1) the petitioner had voluntarily enlisted in the Navy for a specified term of years and that a binding and enforceable contract between him and the United States was created thereby which he was legally obligated to perform, and (2) that the documents filed in support of petitioner's application suggest that petitioner's beliefs have changed but little from what they were at the time of his enlistment.

In support of his first contention respondent relies upon McCord v. Page, 1941, 5 Cir., 124 F.2d 68, and Petition of Green, 1957, D.C.Cal., 156 F.Supp. 174. In my opinion each of those cases is clearly distinguishable from the instant case. When they were decided, the Department of Defense had no procedures making provision for the discharge of enlisted military personnel on the ground of conscientious objection. D.O.D. 1300.6 became effective on August 21, 1962.

Respondent's second contention is likewise, in my opinion, without merit. The

Chief of Naval Personnel did not deny petitioner's application for discharge on the ground that his conscientious objection had existed prior to and at the time of his enlistment. He denied it on the ground that "petitioner's desire to terminate military service is not based on religious principles." The denial of discharge cannot be upheld upon a reason different from that upon which it was based by the Chief of Naval Personnel. Vitarelli v. Seaton, 1959, 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012; S.E.C. v. Chenery Corp., 1943, 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626; Crane v. Hedrick, 1968, D.C.Cal., 284 F.Supp. 250.

Said D.O.D. 1300.6, paragraph IV B. 3b provides that the standards used by the Selective Service System in determining conscientious objector status of draft registrants prior to induction shall apply to servicemen who claim conscientious objection after entering military service.

■ The applicable scope of judicial review in a case such as this is the limited "no basis in fact" standard used in the judicial review of selective service classifications. Hammond v. Lenfest, 1968, 2 Cir., 398 F.2d 705; Cooper v. Barker, 1968, D.C.Md., 291 F.Supp. 952; Crane v. Hedrick, supra. See United States v. Seeger, 1965, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733; Dickinson v. United States, 1953, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132; Estep v. United States, 1946, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567.

Petitioner's beliefs as set forth in his lengthy statement clearly fall within one of the definitions of religious beliefs which the Supreme Court in United States v. Seeger, 380 U.S. at page 174, 85 S.Ct. at page 858 defined as follows:

"Some believe in a purely personal God, some in a supernatural deity; others think of religion as a way of life envisioning as its ultimate goal the day when all men can live together in perfect understanding and peace."

The narrow issue before me is whether there was any basis in fact for the finding by the Chief of Naval Personnel that the petitioner's desire to terminate military service is not based upon religious principles.

After a careful review of the entire record before me, I am convinced that there can be no doubt as to the sincerity of the petitioner in requesting his discharge as a conscientious objector. Each of the officers who interviewed him and his Commanding Officer found that he was sincere in his beliefs. The record does not contain any probative evidence challenging the sincerity or depth of his conscientious objector beliefs.

Similarly, I find nothing in the record which supports the finding of the Chief of Naval Personnel that petitioner's "desire to terminate military service is not based on religious principles". On the contrary, I find that petitioner's conscientious objection to his continued service in the Navy is based upon his religious training and beliefs.

■ In my opinion there was no basis in fact for the denial of the petitioner's application for discharge on the ground that he was not a conscientious objector.

Accordingly, an order will be entered granting his petition for a writ of habeas corpus and, since he is being illegally restrained of his liberty, discharging him immediately from the custody of the United States Navy and from the custody of the respondent. Said order will further provide that its effect will be stayed for a period of fifteen (15) days after the date of its entry to allow the respondent, if he elects to do so, to seek a further stay from the Court of Appeals for the First Circuit.

The order entered by this Court on April 15, 1969 shall remain in effect unless and until modified or vacated by said Court of Appeals.