Joseph PARISI, Appellant,

v.

Major General Phillip B. DAVIDSON et al., Appellees.

No. 25773.

United States Court of Appeals, Ninth Circuit.

Dec. 3, 1970.

Richard L. Goff, San Francisco, Cal. (argued), Douglas M. Schwab, San Francisco, Cal., for appellant.

Steven Kazan (argued), Asst. U. S. Atty., James L. Browning, Jr., U. S. Atty., San Francisco, Cal., for appellees.

Before HAMLEY, ELY, and CARTER, Circuit Judges.

ELY, Circuit Judge:

This is an interlocutory appeal, under 28 U.S.C. § 1292(b), from an Order of the District Court, staying habeas corpus proceedings brought under 28 U.S.C. § 2241 until trial and final determination of court-martial charges then lodged against the appellant.

The complex history of the case is set out in detail in the margin.[1] Briefly,

1. Joseph Parisi was drafted on August 22, 1968. According to the inservice conscientious objector application he filed with the Army on May 22, 1969 (pursuant to Army Regulation (AR) 635–20), Parisi had doubts at the time of his induction about his feelings toward military service. However, his beliefs did not coalesce into conscientious objection until he was well down the road of basic training and initial duty assignment (psychological social work and counseling). His application, which was made prior to issuance of any order for redeployment to a combat station, also stated that his Army experiences to that point led him to the firm conviction that participation in any form of military activity conflicted irreconcilably with his Christian beliefs.

The initial interviews mandated by AR 635–20 uniformly terminated in Parisi's favor; the base Chaplain, the base psychiatrist, and the special hearing officer (as well as Parisi's immediate supervisor) all attested to the sincerity and religious nature of Parisi's conscientious objection to military service. According to the record, the Commander of the Army hospital at Parisi's base as well as the Commanding General of his training center also recommended approval of the application, although they did not interview Parisi personally. However, Parisi's immediate commanding officer, Captain Hubman, recommended disapproval, with the notation, "Consider application contrary to paragraph 3b(3) AR 635–20." This paragraph provides that conscientious objector applications will not be favorably considered when:

"(3) Based on essentially political, sociological, or philosophical views, or on a merely personal moral code."

Captain Hubman had not interviewed Parisi nor had he engaged in any conversations with Parisi about the latter's religious beliefs and convictions.

In November, 1969, the Department of the Army denied Parisi's application. That office noted two reasons for its decision: (1) that Parisi's professed beliefs became fixed prior to entering the service, and (2) that Parisi was not truly opposed to all war due to his religious beliefs, as demonstrated by his attempts thus far to support it.

Parisi then applied to the Army Board for Correction of Military Records (ABCMR) for review of the denial of his discharge. Shortly thereafter, on November 28, 1969, he applied to the United States District Court for the Northern District of California for a writ of habeas corpus. He therein sought discharge from the Army as a conscientious objector.

In his habeas petition Parisi claimed that there was no basis in fact for the grounds cited by the Department of the Army in denying his application for a discharge. In addition, Parisi sought a preliminary injunction pending disposition of the proceeding to prevent respondents from: (1) requiring him to obey an order of August 8, 1969, to undergo training preparatory to being transferred to Viet Nam for duty; and (2) transferring him outside the jurisdiction of the District Court where the proceeding was commenced.

On the day the petition was filed, the District Court, after a hearing, entered an Order enjoining respondents from assigning Parisi to any duties which required materially greater participation in combat activity or training than was being required of him in this then present duties. This Order was to remain in effect pending decision by the ABCMR on Parisi's application to it for discharge as a conscientious objector.

The district court order recites that the court would retain jurisdiction of the case until the ABCMR made its decision. The Order also denied Parisi's application for a preliminary injunction against his transfer out of the Northern District of California. On December 4, 1969, Parisi took an interlocutory appeal (No. 25,133 in this court) from the Order denying his requested preliminary injunction.

About this time, Parisi received orders to process out of his then duty station

Parisi is an army private who alleges that his application for discharge as a conscientious objector was denied by the army without a basis in fact for the denial. His petition was first presented to the District Court in November, 1969, but proceedings were stayed pending his administrative appeal to the Army Board for Correction of Military Records [ABCMR].[2] A partial preliminary injunction also issued, prohibiting Parisi's assignment to any duties which required materially greater participation in combat activity or training than was being required of him in his then duties.

Before the ABCMR's decision, however, Parisi was ordered to Viet Nam, where he was to perform noncombatant duties similar to those which had been assigned to him and which he had been

at Ford Ord, California, and, following training, to report to the Overseas Replacement Station at Oakland, California, on December 31, 1969. This was later changed to the United States Army Personnel Center, Fort Lewis, Washington. Parisi then moved in this court for an order staying his deployment outside the Northern District of California pending disposition of his appeal.

Three other judges of our court denied the motion on December 10, 1969, "on condition that Respondents produce Appellant in this district if the appeal results in his favor." On December 29, 1969, the Circuit Justice denied a similar application for a stay.

Parisi reported, on December 31, 1969, as directed, to the United States Army Personnel Center, Fort Lewis, Washington. At that time he requested an opportunity to file a second application for discharge as a conscientious objector. As required by AR 635–20, he was given seven days to complete his application. However, on January 6, 1970, Parisi advised the authorities at the Personnel Center that he no longer wished to make out an application. Accordingly, he was booked for transportation overseas.

Parisi then refused to obey a military order to board a plane for Viet Nam. He was immediately charged with violating Article 90 of the Uniform Code of Military Justice, 10 U.S.C. § 890, and was confined to the Post Stockade, pending disposition of the charge against him.

On March 2, 1970, while Parisi's court-martial was pending, the ABCMR notified Parisi of its rejection of his application for relief from the Army's denial of his discharge request. Four days later the District Court, pursuant to Parisi's habeas petition, entered an Order requiring respondents (appellees in this appeal) to show cause why a writ should not be issued. The United States responded by moving in the District Court for a stay of the habeas proceedings pending exhaustion of Parisi's military judicial remedies.

At this point Parisi suggested to a panel of judges of our court that the first interlocutory appeal he had taken from his habeas proceeding (No. 25,133 in this court, above) should be dismissed as moot. As noted, the ABCMR had by this time denied him relief, and, since he was incarcerated at Fort Lewis, there was no remaining need for an injunction to keep him in this country. We entered the requested Order, dismissing the first appeal, on March 17, 1970.

On March 31, 1970, responding to the Government's motion that it abstain pending completion of Parisi's court-martial proceedings, the District Court entered an Order staying its consideration of Parisi's habeas petition until there was a trial and a final judgment in the military courts on the court-martial charges.

The District Court did not stay the court-martial proceedings pending our consideration of the interlocutory appeal, nor have we done so; consequently, in the interim between the date of the district court order, March 31, 1970, and the date of our acceptance of the appeal, April 24, 1970, Parisi was, on April 8, 1970, court-martialed and convicted of the charge against him. He is presently confined in the United States Army Disciplinary Barracks, Fort Leavenworth, Kansas, serving a sentence of two years at hard labor, with dishonorable discharge. We have been advised that his appeal before the Court of Military Review is now pending.

2. This is the exhaustion requirement deemed controlling in Craycroft v. Ferrall, 408 F.2d 587 (9th Cir. 1969), vacated and remanded, 397 U.S. 335, 90 S.Ct. 1152, 25 L.Ed.2d 351 (1970). See also Bratcher v. McNamara, 415 F.2d 760 (9th Cir. 1969); Krieger v. Terry, 413 F.2d 73 (9th Cir. 1969). In Craycroft's appeal before the Supreme Court, the Solicitor General conceded that the administrative remedies which our court had required to be exhausted were either unavailing or had already been exhausted. 397 U.S. at 335, 90 S.Ct. 1152.

performing in this country. After unsuccessful attempts to win a stay of his redeployment order both from our court and from the Circuit Justice, Parisi chose, with all attendant risks, to disobey a military order to enplane for Viet Nam. Charges were then immediately filed against him, under U.C.M.J. art. 90, for failure to obey a lawful order.

Prior to the date set for court-martial, the ABCMR notified Parisi that it had ruled against his appeal. The District Court promptly ordered the Government to show cause why a writ should not then issue. In its return, the Government, requested the stay Order in question, on the grounds that to permit concurrent federal court proceedings would constitute an unwarranted interference with the military court system.

The question is not an easy one, but we have concluded that habeas proceedings were properly stayed pending the final conclusion of Parisi's military trial and his appeals therefrom.

■■ The military, no less an agency of the federal government than the federal court system, has the equal responsibility to act consistently with the Constitution and laws of the United States.[3] While civilian courts are available to cor-

rect, in a proper case, abuses by military authorities,[4] they must be careful to avoid unwarranted interference with internal military matters.

"[J]udges are not given the task of running the Army. The responsibility for setting up channels through which such grievances can be considered and fairly settled rests upon the Congress and upon the President of the United States and his subordinates. The military constitutes a specialized community governed by a separate discipline from that of the civilian. Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to interfere in judicial matters."

Orloff v. Willoughby, 345 U.S. 83, 93–94, 73 S.Ct. 534, 540, 97 L.Ed. 842 (1953). Thus, there is the general rule that:

"[H]abeas corpus petitions from military prisoners should not be entertained by federal civilian courts until all available remedies within the military court system have been invoked in vain."

Noyd v. Bond, 395 U.S. 683, 693, 89 S. Ct. 1876, 1882, 23 L.Ed.2d 631 (1969).[5]

---

3. Craycroft v. Ferrall, 408 F.2d 587, 595 (9th Cir. 1969), vacated and remanded, 397 U.S. 335, 90 S.Ct. 1152, 25 L.Ed.2d 351 (1970).

4. *See, e. g.*, Burns v. Wilson, 346 U.S. 137, 73 S.Ct. 1045, 97 L.Ed. 1508 (1953); Hammond v. Lenfest, 398 F.2d 705 (2d Cir. 1968); Crane v. Hedrick, 284 F. Supp. 250 (N.D.Cal.1968).

5. This rule was established by Gusik v. Schilder, 340 U.S. 128, 71 S.Ct. 149, 95 L.Ed. 146 (1950). There, Mr. Justice Douglas, speaking for a unanimous Court, more precisely expressed the rationale for this result:
   "An analogy is a petition for habeas corpus in the federal court challenging the jurisdiction of a state court. If the state procedure provides a remedy, which though available has not been exhausted, the federal courts will not interfere. * * * The policy underlying that rule is as pertinent to the collateral attack of military judgments as

it is to collateral attack of judgments rendered in state courts. If an available procedure has not been employed to rectify the alleged error which the federal court is asked to correct, any interference by the federal court may be wholly needless. The procedure established to police the errors of the tribunal whose judgment is challenged may be adequate for the occasion. If it is, any friction between the federal court and the military or state tribunal is saved. * * * Such a principle of judicial administration is in no sense a suspension of the writ of habeas corpus. It is merely a deferment of resort to the writ until other corrective procedures are shown to be futile."
*Id.* at 131–132, 71 S.Ct. at 151–152. The deference thus deemed appropriate is not demanded by our court's jurisdictional limitations, but by sound considerations of comity. Hammond v. Lenfest, 398 F.2d 705 (2d Cir. 1968); In re Kelly, 401 F.2d 211 (5th Cir. 1968). So, in an

Parisi does not argue the wisdom and correctness of the exhaustion of administrative remedies doctrine as applied to military proceedings. He strenuously contends, however, that the doctrine was improperly applied in the court below.

First, Parisi argues that the doctrine applies only to administrative, not judicial remedies. The risk of imprisonment and dishonorable discharge inherent in military judicial proceedings, he claims, renders it unfair to require one first to assert his claims as defenses at a military trial before being able, successfully, to initiate habeas proceedings in a federal civilian court.

In support of this argument, Parisi relies, primarily, upon Crane v. Hedrick, 284 F.Supp. 250 (N.D.Cal.1968). There, it appears that the district judge expressly rejected Government contentions that a claim of wrongful detention in the military by an inservice conscientious objector must first be raised as a defense to court-martial, noting that

"[i]f [the Government's] contentions were to prevail, the only way one in petitioner's position could raise his constitutional claims of wrongful detention would be by first committing a crime and facing the possibility of imprisonment."

284 F.Supp. at 253.

However, assuming, *arguendo*, the correctness of *Crane*, the case is distinguishable. Crane was a sailor who deserted

his ship after his application for conscientious objector discharge was administratively denied, but before formal charges were brought against him in military court. We note the reasoning, on similar facts,[6] of Judge Kaufman in Hammond v. Lenfest, 398 F.2d 705 (2d Cir. 1968):

"[A]lthough the government maintains that Hammond should present his claim as a defense to a court martial, it fails to explain wherein lies his power to convene the court martial that is supposedly to judge him. And, as Professor Jaffe posits, where '[o]ne must at his risk await such further enforcing procedure as the agency chooses to initiate * * * the exhaustion doctrine is inapplicable; the person has no remedy.' Jaffe, The Exhaustion of Administrative Remedies, 12 Buff.L.Rev. 327, 329 (1963)."

398 F.2d at 714.

This reasoning is inapposite to Parisi's case, for when the District Court issued the Order here challenged, charges had then already been filed against Parisi by the military authorities, the tribunal that was to judge him had already been convened, and the trial itself was imminent. Parisi was not under the burden of being required to commit a further military "crime" in order to provide himself with a forum. He had already done the act alleged to be unlawful. Thus, we cannot see that either *Crane* or *Hammond* supports Parisi's argument.[7]

appropriate case, habeas may be entertained without strict adherence to the exhaustion requirement. In re Kelly, *supra*.

We have apparently not dealt with the precise exhaustion question raised by this appeal. We declined to consider the issue in Craycroft v. Ferrall, 408 F.2d 587, 589 n. 1 (9th Cir. 1969), vacated and remanded, 397 U.S. 335, 90 S.Ct. 1152, 25 L.Ed.2d 351 (1970). There we * * * distinguish[ed] our analysis of the exhaustion [of administrative remedies] problem from cases in which, once military administrative remedies have been exhausted, in-service conscientious objectors were allowed to seek civil relief before enduring court-martial proceedings and exhausting possible appeals therefrom."

*Id.* at 589 n.1 (citations omitted).

Last term the Supreme Court also declined to resolve the question whether inservice conscientious objectors who have exhausted administrative remedies must also undergo court-martial proceedings before seeking habeas relief, although it noted that the Circuits have divided on the issue. Noyd v. Bond, 395 U.S. 683, 685 n.1, 89 S.Ct. 1876, 23 L.Ed.2d 631 (1969) (citing cases).

6. Hammond's application for discharge from the Navy on conscientious objector grounds had been denied before habeas was sought, but no military charges were then pending against him.

7. The distinction drawn herein was implicitly recognized in *Hammond*, where

In Gann v. Wilson, 289 F.Supp. 191 (N.D.Cal.1968), an inservice conscientious objector was granted habeas relief during the pendency of his Article 90 court-martial for failure to obey orders which were given after administrative denial of his application for conscientious objector discharge. But *Gann* relied solely on *Crane* and *Hammond*, *supra*, and we think that such reliance was misplaced.[8]

Here, the District Court relied upon In re Kelly, 401 F.2d 211 (5th Cir. 1968), wherein the Fifth Circuit upheld a stay order on facts very similar to those before us.[9] Parisi attempts to distinguish *Kelly*, arguing that there, habeas was invoked after formal court-martial charges were lodged, whereas he sought habeas before he committed the disobedience leading to the military charges against him.[10] However, Parisi's November 1969 petition was prematurely filed under our rule in Craycroft v. Ferrall, 408 F.2d 587 (9th Cir. 1968), vacated and remanded, 397 U.S. 335, 90 S.Ct. 1152, 25 L.Ed.2d 351 (1970). When the ABCMR ruled in March 1970, satisfying the administrative exhaustion requirement, Parisi renewed his petition, as was proper, but he, at that time, was already facing court-martial. Thus, he is in the same position as was Kelly in the Fifth Circuit.

We are not blind to the possible moral dilemma that Parisi faced. We cannot quarrel with the proposition that disobedience based on the dictates of religious conscience is based on "an obligation, superior to that due the state, of not participating in war in any form." United States v. Seeger, 380 U.S. 163, 172, 85 S.Ct. 850, 857, 13 L.Ed.2d 733 (1965). However, the District Court's injunction was reasonable and afforded ample protection for Parisi's religious scruples. Three judges of our court and our Circuit Justice found that the military order for Parisi's redeployment did not, in the circumstances, violate the District Court's protective order. While Parisi may honestly have disagreed, that disagreement cannot be held to have justified his unilateral determination to defy his military superiors, not to mention the federal judges who had considered and rejected his claim. Were every soldier dissatisfied with some phase of national policy or military effort allowed to exercise similar discretion, necessary military discipline would collapse. Had Parisi bided his time, it appears, on the record before us now, that he likely would have obtained the relief he sought from the District Court. If the fruits of his impatience are bitter, he has only himself to blame for their production.

■ A serviceman facing court-martial should not be permitted habeas relief in a federal court during the pendency of his military trial and appeals therefrom, except, perhaps, when it might appear that no military tribunal to which he has recourse is capable of granting an appropriate remedy.

In possible anticipation of this qualified conclusion, Parisi argues that the relief he sought in the District Court is in fact elsewhere unavailable. This argument is based on two grounds. First, Parisi asserts that denial of an application for conscientious objector discharge without a basis in fact is not recognized as a defense to an Article 90 court-mar-

the Second Circuit distinguished *Gusik* on the grounds that Gusik "had already been court martialed and the Court simply concluded that once that route had been traversed, it was incumbent upon him to exhaust his appeal * * *." 398 F.2d at 713.

8. Parisi also relies on Talford v. Seaman, 306 F.Supp. 941 (D.Md.1969), and Cooper v. Barker, 291 F.Supp. 952 (D.Md. 1968). These cases, however, present no new considerations.

9. Kelly was an inservice conscientious objector court-martialed for wilful disobedience of a superior officer. He brought habeas proceedings during the pendency of his court-martial.

10. Parisi also asserts that *Kelly* rested, in part, on the court's conclusion that there was little chance of Kelly's success on the merits of his petition in the District Court.

tial. Second, he argues that even if his claim were a good defense, and established to the satisfaction of the military court, the only remedy he could there expect would be acquittal, not the honorable discharge that might be ordered by a District Court.

Were this true, we would hesitate to subject Parisi to the rigors of a fruitless series of appeals; however, we are not convinced that he is correct in his interpretation of the existing state of military law.

Parisi supports the first of the arguments now under discussion only by his interpretation of certain of the rulings of the military judge at his court-martial.[11] It appears to us, however, that if error in the military court is indicated, it is not that the military judge refused to review the merits of Parisi's conscientious objector claim, but that he may have adopted an improperly narrow standard for review thereof. This is surely an appropriate point to present to the military's appellate tribunals, and we are referred to no case from the Court of Military Appeals, the highest military court, indicating that an appropriate constitutional standard will not be required.[12]

11. "Well, I do not read Noyd the way you do as requiring that I make a decision and a determination of the basis in fact other than to examine the entire file and the entire record, and in my view determine whether or not the ruling of the Secretary of the Army was arbitrary, capricious, unreasonable, or an abusive [abuse of?] discretion. Now, that may be saying in different words that I am ruling on the basis in fact. I'm not sure about that. But I do not consider that to be—and I want the record to so reflect, so that you may have an opportunity to get a definite ruling on it—that I am not ruling solely as a basis of fact. I am ruling that I have examined this document. I have studied it. I find it conforms to AR 635-20. There has been no deprivation of administrative due process and I find from the examination of this record that the ruling of the Secretary of the Army was not arbitrary, capricious, unreasonable, or an abusive [abuse of?] discretion."

12. In fact, Parisi himself argued at his court-martial that United States v. Noyd, 18 U.S.C.M.A. 483, 40 C.M.R. 195, 2 S.S.L.R. 3218 (1969), had settled that review of the basis in fact for administrative denial of a conscientious objector discharge was proper on the issue of the lawfulness of the order alleged to have been disobeyed. United States v. Wilson, 2 S.S.L.R. 3548 (U.S.C.M.A.1969), is not contrary. There, the accused had refused an order to put on his uniform, was court-martialed, and the following instruction was given by the law officer: "* * * Personal scruples or qualms, whether based upon religious convictions, personal philosophy, or otherwise, are no defense to the offense of wilful disobedience of the order as alleged. * * *"

In upholding this instruction, the Court of Military Appeals remarked:

"As *Noyd* indicated, the freedom to think and believe does not excuse intentional conduct that violates a lawful command. * * * If the command was lawful, the dictates of the accused's conscience, religion, or personal philosophy could not justify or excuse disobedience."

2 S.S.L.R. at 3548. However, *Noyd* seems to make it clear that a defendant's religious convictions *are* admissible on the issue of the lawfulness of the order allegedly disobeyed. If he were erroneously denied discharge as a conscientious objector, some type of subsequent orders, obviously conflicting with his religious convictions, could be unlawful:

"Colonel Hansen testified he gave the accused the order to fly as an F-100 instructor only after he had been informed the application for separation [as a conscientious objector] had been denied. The validity of the order, therefore, depended on the validity of the Secretary's decision. * * * If the Secretary's decision was illegal, the order it generated was also illegal."

United States v. Noyd, *supra* at 3221.

Thus *Wilson* merely stands for the proposition that an inservice conscientious objector must obey "lawful" orders, not *all* orders. *See also* United States v. Dunn, 38 C.M.R. 917 (1968); United States v. Taylor, 37 C.M.R. 547 (1966).

In this connection, we think the legality of any such subsequent military order could not be determined without consideration of its nature, in scope and magnitude. Obviously, an inservice objector, remaining in the service pending the review of the denial of his claim for discharge, should not be permitted to defy, for example, an order to report for muster

Parisi is also unable to support his contention that the military appellate tribunals are unable to grant him a discharge no matter what his defense is. We are not now prepared to assume that, if it is determined that Parisi's application for discharge was denied without basis in fact, an error of such constitutional magnitude cannot be rectified by a reviewing court within the military system.[13] If it should eventually come to pass that the military courts will not apply those constitutional principles which must control their decisions, as well as ours, Parisi may then bring that fact to the attention of the District Court.

Affirmed.

and drill or an order to maintain himself and his quarters cleanly and neatly. Here, again, we note that the District Court had protected Parisi against exposure to violence. *Cf.* Kimball v. Commandant, 12th Naval Dist., 423 F.2d 88 (9th Cir. 1970).

13. The All Writs Act, 28 U.S.C. § 1651 (a), has been held to permit a military court to issue all "writs necessary or appropriate in aid of [its] * * * jurisdiction." United States v. Frischholz, 16 U.S.C.M.A. 150, 36 C.M.R. 306 (1966). The military court's power to issue emergency writs of habeas corpus is well-settled. Noyd v. Bond, 395 U.S. 683, 695 n.7, 89 S.Ct. 1876, 23 L.Ed.2d 631 (1969); Levy v. Resor, 17 U.S.C.M.A. 135, 37 C.M.R. 399 (1967).