**Frank J. LUPO, Petitioner,**

v.

**Melvin LAIRD, Secretary of Defense et al., Respondents.**

**Civ. A. No. 71–545.**

United States District Court,
D. South Carolina,
Columbia Division.

July 26, 1971.

Jack F. McGuinn, Columbia, S. C., for petitioner.

John K. Grisso, U. S. Atty. for Dist. of S. C., Columbia, S. C., and Wistar D. Stuckey, Asst. U. S. Atty., Columbia, S. C., for respondents.

### ORDER

HEMPHILL, District Judge.

Petitioner, presently a member of the United States Army, and stationed at Fort Jackson, S. C., claims, in his petition for a writ of habeas corpus, that a cut achilles tendon on the right leg disables him for duty. He asserts he should be discharged. Respondents have answered, now seek decision of this court on a motion for summary judgment. The medical records of the United States Army Hospital, Fort Jackson, South Carolina, are a part of the official record.

The records reflect that he was given a pre-induction physical, in New York City, January 26, 1971, and the condition was noted. He was found qualified for induction. He was sent to the orthopedic clinic where his condition was evaluated. It is not clear whether his podiatrist, Dr. Jerome Miller, of 4 West Street, Haverstraw, New York, and New York City, submitted his note about Lupo before this examination, but it appears Dr. Miller's opinions were consistently considered by the Army. The Army's clinical examination notes:

"Small laceration repoused scar over right achilles tendon with some residual thickening. Good motion and function of foot."

After induction he was again examined and found fit for limited duty. Upon Congressional inquiry [1] being made, on May 19, 1971, the Captain of the Orthopedic Service reported:

1. This young man was seen in the Orthopedic Clinic in reply to Congres-

---

1. Members of Congress are beseiged by Mothers, loved ones, and reluctant servicemen to "get me out of the Army." The usual procedure is for the Member of Congress to write and inquire, usually prompting a review at appropriate military headquarters, and a reply.

sional Inquiry for determination of physical fitness for military duty because of problems with his feet.

2. It is found that his x-rays are within normal limits. On physical examination, he did previously have an injury to his Achilles' tendon on the right side, which is well healed. There is scarring about the Achilles' tendon. Dorsiflexion of the left ankle is to 15°, dorsiflexion on the right ankle is to 12°. The retention standards are if one cannot dorsiflex to 10° or less, this is disqualifying.

3. In view of the fact that this man does have this scar, that he dorsiflexes to 12°, it is felt that he should be given a permanent L–2 profile of no marching over 2 miles, no doubletiming over 50 yards. If there is any problem in the future with this, appropriate treatment should be taken and he can seek aid in the Dispensaries for this problem.

4. The final diagnosis is: Old laceration, Achilles' tendon, with good repair and good healing.

On May 15 his official health record reflected the limited duty.

An additional statement of Captain Berg dated May 28, 1971, in the medical file reflects that petitioner's case was again reviewed by two orthopedic surgeons including Dr. Gross, Chief of Orthopedic Services. It was the feeling of Dr. Gross that the duty limitations previously awarded were more than adequate. In short, the medical records reflect that the Army has carefully considered petitioner's complaint and has found him medically qualified. In so awarding the duty limitations, the file reflects that the statement of petitioner's private physican, Dr. Jerome Miller, was considered.

The May 28, 1971, report reflects:
1. On 19 May 1971, Pvt. Lupo was first seen in the Orthopedic Clinic, U. S. Army Hospital in reply to Congressional Inquiry. It was found that x-rays were within normal limits. On physical examination that date, there was found to be a well healed scar over the distal portion of the Achilles' tendon on the right side. He was able to dorsiflex the left ankle to 15°, dorsiflexed the right ankle to 12°. In view of the above scar and dorsiflexion to the above stated degrees, he was granted a permanent L–2 profile of no marching over 2 miles, no doubletiming over 50 yards.

2. He now returns, 6 days later, with another Congressional Inquiry and the case was reviewed by two other Orthopedic surgeons, Dr. Weiland and the Chief, Orthopedic Service, Dr. Gross. Physical examination revealed circumference of the calves to be equal. The patient was able to walk on his heels and toes without difficulty. There was no rubor over the area of the tendon repair. It was the feeling of Dr. Gross that this man was fit for full running and full marching and the permanent profile previously awarded was more than adequate.

3. DIAGNOSIS: Old laceration, Achilles tendon, right, with good repair and good healing.

Petitioner filed his complaint June 9, 1971.

Unfortunately for petitioner's ambitions, he has asked this court to intercede in matters, or decisions, peculiarly and properly within the area of military discretion. The United States Army has made a decision based upon its discretionary judgment. Absent a showing that there existed no substantial basis in fact for such a decision, this court has no right to interfere. Petitioner's claim fails on its face when the facts of the military record are applied.

The Supreme Court of the United States has announced the ground rules in cases such as the one before us. Mr. Justice Jackson, speaking for the Court in Orloff v. Willoughby, 345 U.S. 83, 93, 73 S.Ct. 534, 540, 97 L.Ed. 842, in defin-

ing the courts' responsibility in cases of this nature, stated:

However, we are convinced that it is not within the power of this Court by habeas corpus to determine whether specific assignments to duty fall within the basic classification of petitioner.

\* \* \* \* \* \*

We know that from top to bottom of the Army the complaint is often made, and sometimes with justification, that there is discrimination, favoritism or other objectionable handling of men. But judges are not given the task of running the Army. The responsibility for setting up channels through which such grievances can be considered and fairly settled rests upon the Congress and upon the President of the United States and his subordinates. The military constitutes a specialized community governed by a separate discipline from that of the civilian. Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters. While the courts have found occasion to determine whether one has been lawfully inducted and is therefore within the jurisdiction of the Army and subject to its orders, we have found no case where this Court has assumed to revise duty orders as to one lawfully in the service.

Chief Judge[2] Roszel C. Thomsen diligently followed this direction in Weber v. Clifford (D.C.Md.1968), 289 F.Supp. 960. There a 19-year old soldier with a history of rheumatic fever, sought to have the court set aside his orders for Vietnam and to require that he be reclassified for limited service. The court held that it had no jurisdiction to review decisions of doctors in the United States Army that plaintiff was fit for service in Vietnam. The court went so far as to note in that case "\* \* \* If the Court had jurisdiction to review the decision of the Army doctors \* \* \* the Court might well overrule the decision finding plaintiff fit for service in Vietnam. But the law seems clear that the Court has no such power." The Court granted the motion to dismiss.

Byrne v. Resor, 412 F.2d 774 (3rd Cir. 1969) is squarely in point and prohibits relief. There the plaintiff had enlisted in the United States Army Reserve for a six-year period. He served the required six-months' active duty, and attended summer camps, and drills of his local reserve unit. On September 29, 1968, the plaintiff appeared for drill, but was marked absent by his commanding officer because he had no belt, under authority of an Army regulation that stated the commander could do this if he determined the member did not present a soldierly appearance. This unexcused absence was crucial to the plaintiff because it was the fifth such absence within a year, and as a result he was ordered to active duty under the appropriate regulation. The plaintiff claimed that the September determination of unexcused absence for failure to wear the prescribed belt was arbitrary, capricious, and unreasonable, especially when such belts were available to all members of the unit in the nearby supply room and in view of the serious consequences which were to flow from this, his fifth unexcused absence. The court held:

While to a civilian the absence of a belt may seem a trifling matter and the consequences here may seem unduly harsh, it is not our function to review the discretionary judgment of a military officer made within the scope of his authority. \* \* \* Similarly, we will not interfere with the decision of the Army physician that plaintiff is fit for active duty simply because a private physician made a report which indicated that he disagreed. \* \* \*

On different facts similar holdings have been published in Parisi v. Davidson (CCA 9 1970), 435 F.2d 299, 302

---

2. Chief Judge of the District of Maryland.

and Anderson v. Laird (CCA 7 1971), 437 F.2d 912, 914. Distinguishable is Bluth v. Laird (CCA 4 1970), 435 F.2d 1065, where the claim of the soldier did not receive due process in accordance with Army regulations.

There is nothing in the record before this court to warrant this forum's interference in the conduct of the military authorities in the classification of petitioner. The military has the prerogative to determine the balance between military needs and his personal rights. The military has done so on a factual basis which gave consideration to his claims, and sympathy and treatment to his complaints.

The petition is dismissed.

The Clerk will enter summary judgment for defendants.

And it is so ordered.

